# IN THE COURT OF APPEALS 04/22/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-KA-00478 COA

## CONSOLIDATED WITH

## NO. 95-KA-00653 COA

**VERSIE T. SCOTT A/K/A VERSIE TERRON SCOTT**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. GEORGE C. CARLSON, JR.

COURT FROM WHICH APPEALED: PANOLA COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

DAVID L. WALKER

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: JOLENE LOWRY

DISTRICT ATTORNEY: ANN LAMAR

NATURE OF THE CASE: RAPE

TRIAL COURT DISPOSITION: GUILTY; SENTENCED TO SERVE 25 YEARS IN THE MDOC

& COSTS OF COURT

CERTIORARI FILED: 7/11/97

MANDATE ISSUED: 9/26/97

BEFORE McMILLIN, P.J., DIAZ, AND SOUTHWICK, JJ.

DIAZ, J., FOR THE COURT:

The Appellant, Versie Terron Scott (Scott), was tried and convicted in the Panola County Circuit Court of forcible rape. Scott was sentenced to serve a term of twenty-five (25) years in the Mississippi Department of Corrections. Aggrieved, Scott appeals to this Court asserting the following issues: (1) that the lower court erred in allowing witness Tony Axthelm to testify about lab results; (2) that the lower court erred in denying Scott's motion to suppress; (3) that the lower court erred in denying Scott's motion for a continuance; and (4) that the lower court erred in denying Scott's motion for a new trial. Finding no reversible error, we affirm.

## FACTS

At approximately 4:00 A.M. on August 10, 1992, G.W. was awakened by someone pulling on her arm. Scott, the Appellant, was standing over her bed with a knife. He told her that he would kill her children if she did not get out of bed. He pulled her by the arm out of bed and into the living room. Scott then forced G.W. onto the couch and proceeded to rape her. He stopped when G.W.'s daughter began crying in the bedroom. At that point, he got up and grabbed his clothes as she ran out the front door screaming for help. When she realized that she had left her two children in the house, she ran back inside and found Scott in the kitchen. She told him to get out. He responded by picking up an iron and telling her to shut up. He then climbed out of the kitchen window.

## DISCUSSION

### I. TESTIMONY REGARDING LAB RESULTS

Scott first argues that the lower court erred by allowing Tony Axthelm to testify about G.W.'s lab results. Axthelm was the a nurse on duty in the emergency room the night G.W. went in after she was raped. Scott maintains that Dr. Homberg, the physician who treated G.W. that night, was the proper party to testify regarding the treatment and lab results of G.W. Scott claims that Axthelm should not have been able to testify as to the results because she was not present when the lab did its analysis. Scott argues that his right to confrontation was violated because he was not given the opportunity to cross-examine Dr. Homberg and the lab technician who performed the test and prepared the lab report and analysis. Scott also summarily argues that such testimony was inadmissible hearsay.

The record reveals that Axthelm was asked about the lab results to which she was able to state that sperm was found in the vaginal wash taken from G.W. However, when the State asked Axthelm what "one-plus sperm" meant from the lab report, she merely responded, "All I know is that means sperm

was found." No further testimony was offered from Axthelm regarding the results gathereed from the tests.

Scott cites to *Barnette v. State* as one of the cases in support of this argument. *Barnette v. State*, 481 So. 2d 788 (Miss. 1985). In *Barnette*, the supreme court held that it was reversible error to introduce a certificate of analysis of a controlled substance without requiring the analyst to testify. *Id.* at 791. The *Barnette* case is readily distinguishable from the case at bar. In *Barnette*, the defendant was charged with selling a controlled substance. An essential element of the crime of selling a controlled substance is that the substance is indeed a controlled one within the purview of the statute. This must be determined by chemical analysis. The court held that to allow the essential element to be proven solely by a certificate of the analyst impermissibly lessens the constitutionally required burden on the state. *Id.* In the present case, Axthelm merely testified that the lab results indicated that sperm was found. She did not go any further into the analysis of the report. We do not find that such testimony lessened the burden for the prosecution in any manner. Futhermore, we do not find that Scott's right to confront adverse witnesses was violated. In any case, if any error be found here, it was no more than harmless error.

A violation of the Confrontation Clause is subject to harmless error analysis. *Earl v. State*, 672 So. 2d 1240, 1243 (Miss. 1996). The correct inquiry on appellate review has been stated as follows:

> Assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, *whether the testimony was cumulative, the presence of evidence corroborating or contradicting the testimony of the witness on material points*, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.* at 1243-44 (emphasis added). In the present case, the parties stipulated to the introduction of the Mississippi Crime Lab reports which encompassed the content of Axthelm's testimony, plus further information analyzing the findings from the test. Scott specifically agreed to the stipulation of the reports. Therefore Axthelm's testimony regarding the results of the lab test were cumulative at best.

I. MOTION TO SUPPRESS

Scott contends that the lower court erred in failing to suppress his statement made to the police. Scott insists that the statement he made was not voluntary. Scott contends that he did not understand his rights.

The general rule is that for a confession to be admissible, it must have been given voluntarily and not given as a result of promises, threats or inducements. *Morgan v. State*, 681 So. 2d 82, 86 (Miss. 1996). The State bears the burden to prove beyond a reasonable doubt that the confession was voluntary. *Id.* This burden is met and a prima facie case made out by testimony of an officer, or other persons having knowledge of the facts, that the confession was made without threats, coercion, or offer of reward. *Id.* The standard of review on the voluntariness of confessions is that so long as the lower court applied the correct legal standard, we will not overturn a finding of fact made by a trial

judge unless it be clearly erroneous. *Id.*

In the case *sub judice*, Scott claims that he did not understand his rights that the officers read to him. Furthermore, he claims that he was asked to sign a blank piece of paper which he did. He then asserts that one of the officers began writing on the blank sheet of paper after he signed it. Scott claims that the police told him that if he confessed to the rape, he would only be given probation. On the other hand, Detective Captain Roger Oswalt and Detective Lannie Jones, of the Batesville Police Department both testified that Scott was advised of his rights, and that both he and his grandmother (his legal guardian), signed the waiver form in the presence of both detectives. Thus, the State met its burden, and a prima facie case was established through the detectives' testimony that the statement was voluntary. There is no merit to this issue.

### III. CONTINUANCE

Scott next argues that the lower court erred in failing to grant his second motion for a continuance. Scott's trial was originally set for March 2, 1992. On February 28, 1992, Scott was granted a continuance on the basis that he wanted to conduct an independent DNA analysis, and that he was not able to up until that date because the D.A's office had just received the evidence back from the Mississippi Crime Lab two days earlier. The court continued the case until June 22, 1992, stating that this was to be a firm setting and that no further continuances would be granted due to Scott's failure to have the DNA tests performed. At this hearing, the State agreed to furnish the defense with names and phone numbers of laboratories that performed such DNA tests. This information was furnished to defense counsel within a week of the first hearing.

On June 17, 1992, Scott filed a second motion for a continuance. In the hearing for this second motion, Scott argued that he should be allowed more time because the first blood samples submitted to the independent lab had deteriorated to the point where they could not be used to validate any test results. He argued that the process was delayed because the Mississippi Crime Lab would not turn over the samples to the independent lab without a court order. Therefore, he argued that he should be granted a continuance so that he could provide additional samples to the lab. The court denied his second motion for a continuance stating that the State had complied with what it agreed to do by furnishing the defense with the requested information within a week of the first hearing for a continuance. Furthermore, the court complied with its obligation by issuing an order for the State Crime Lab to turn over the samples within nine days after the prosecution received the letter from Scott as to which lab would be conducting the analysis. It was Scott, however, that waited forty six days before he notified the State as to which independent laboratory would be conducting the analysis. It is well settled that whether a continuance is granted or denied is within the sound discretion of the trial court. *Jackson v. State*, 684 So. 2d 1213, 1221 (Miss. 1996). Only where manifest injustice appears to have resulted from the decision to deny should this Court reverse on that basis. *Id.* We are unable to find where Scott was prejudiced from the denial of a second continuance. After already being granted a continuance, Scott had adequate time to secure the evidence needed by the independent lab. The lower court acted well within its dicretion in refusing a second continuance in this instance.

### IV. NEW TRIAL

Finally, Scott argues that the lower court erred in failing to grant his motion for a new trial.

Scott maintains that one of the jurors empaneled in his case, Lorraine Sanford, was an acquaintance of Katherine Vaughn, Scott's grandmother. During the hearing for this motion, Ms. Vaughn testified that Sanford held some animosity towards Vaughn after Vaughn's daughter, who had been dating Sanford's son, decided to marry someone else. She also testified however, that the last time she had any contact with Sanford was twenty years ago.

The rule espoused by the supreme court when a prospective juror in a criminal case fails to respond to a question posed on voir dire is that the court must consider three elements: (1) whether the question was relevant to voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. *Tolbert v. State*, 511 So. 2d 1368, 1377 (Miss. 1987) (citations omitted). If the court's determination of these elements is in the affirmative, the court then must determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror's failure to respond. *Odom v. State*, 355 So. 2d 1381, 1383 (Miss. 1978). This must be determined on a case by case basis considering the facts before the court. *Id.* Again, the court's judgment will not be disturbed on appeal unless it appears that it is clearly wrong. *Id.*

A review of the record shows that the State specifically asked on voir dire if anyone of the prospective jurors knew Mr. and Mrs. Vaughn, Scott's grandparents. The lower court, however, found no prejudice from Sanford's failure to respond. In this particular instance, the juror and Ms. Vaughn have had no contact with each other for twenty years. The court felt the circumstances were inadequate to show that Sanford harbored any type of ill feelings towards Scott himself. In the present case, we do not find that the lower court was clearly wrong in finding that Scott was not prejudiced by Sanford's failure to respond on voir dire; therefore, we find no merit to this issue.

Finding no merit to this appeal, we affirm the judgment of the lower court.

**THE JUDGMENT OF CONVICTION OF THE PANOLA COUNTY CIRCUIT COURT OF RAPE AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO PANOLA COUNTY.**


**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**


**HINKEBEIN, J., NOT PARTICIPATING.**